**ROARK PRINTING, INC. Plaintiff-Respondent,**

v.

**WORM WORLD, INC., Defendant-Appellant,**

**Berquist Armstrong Photography, Inc., Intervenor-Respondent.**

No. 21790.

Missouri Court of Appeals, Southern District, Division One.

July 6, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1998

Application to Transfer Denied Sept. 22, 1998.

John Wise, Law Offices of J. Michael Riehn, Cassville, for Appellant.

W. Craig Hosmer, William H. McDonald & Associates, Craig A. Smith, Paul F. Sherman, Daniel, Clampett, Powell & Cunningham, L.L.C., Springfield, for Respondents.

GARRISON, Presiding Judge.

Worm World, Inc. ("Worm World") appeals from the trial court's judgment against it in favor of Roark Printing, Inc. ("Roark") and Berquist Armstrong Photography, Inc. ("Berquist Armstrong"). Worm World, which manufactures and sells fishing tackle, contracted with Roark to produce a catalogue of Worm World's products. Berquist Armstrong was retained to photograph the products for the catalogue and for Worm World's archives. When Worm World failed to pay for its services, Roark sued on the contract, and Berquist Armstrong intervened. The

trial court resolved the matters at issue in this appeal in favor of Roark and Berquist Armstrong, and awarded the parties damages. Worm World now appeals, arguing that the trial court's judgment is not supported by substantial evidence and is against the weight of the evidence. We affirm.

A business relationship between Worm World and Roark began in 1993, when Toby Carroll, Roark's representative, made a sales call at Worm World's plant. In March of that year, Roark gave Worm World a quote for the production of header cards for crank baits.[1] The quote contained the phrase "composite film furnished." Worm World hired Roark for the project, and Roark sent Worm World an invoice that reflected the earlier quote, plus a freight charge and a charge of $230 for composite film provided by Roark. Worm World paid this invoice in full.

In May 1993, Worm World began negotiating with Roark about the production of a catalogue. Roark provided written estimates of $11,309 for 20,000 32–page catalogues, and $14,600 for 20,000 40–page catalogues. These estimates also recited, "composite film furnished." Worm World ordered 20,000 catalogues, which it wanted prior to a trade show in July 1993, and Roark began production. Worm World failed to supply the necessary composite film, and Roark, with Worm World's blessing, eventually retained Berquist Armstrong to photograph Worm World's products and help prepare the film. Berquist Armstrong also photographed lures not appearing in the catalogue for Worm World's archives.

Roark was unable to complete the entire project before the July trade show, but it did print 5,000 catalogues, and shipped 2,500 of them to Worm World at that event. Roark did not print the remaining catalogues, and invoiced Worm World for $43,271 for the 5,000 which had been printed. The invoice consisted of $6,817 for "Composition and layout;" $15,989.40 for "Color separation process;" $17,876.48 for printing; and $2,588.12 for freight. Worm World failed to pay the

invoice, and this litigation ensued. Roark sought damages for this invoice, as well as other unpaid Worm World invoices, and presented evidence that the cost of preparing to print the catalogues was essentially the same, whether 5,000 or 20,000 were actually printed. Berquist Armstrong intervened, seeking damages from Worm World in the amount of $14,103.94 for its photography services in connection with the catalogue, Worm World's archives, and other projects.

The trial court held, *inter alia*, that "because [Worm World] failed to furnish the photography, [Roark] was required to do layout, composing, and color separation," and that "because of previous dealings between the parties [Worm World] should have understood the phrase 'composite film furnished' and the consequences of failing to provide the same." It then awarded Roark damages of $35,682.88 in connection with the catalogue. This sum represented Roark's fees of $6,817 for composition, $15,989.40 for separation of the color film, and $17,876.48 for printing, less $5000, which the trial court deemed a "reasonable credit" to Worm World for the catalogues Roark failed to deliver.[2] The trial court also held that Berquist Armstrong's services were required because of Worm World's failure to furnish the composite film. It ruled in favor of Berquist Armstrong under the theories of express contract and quantum meruit, and awarded it damages of $14,103.94.

This court will affirm the trial court's judgment unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Mindful of the trial court's superior opportunity to assess the credibility of witnesses, we recognize that it is entitled to believe all, part, or none of the testimony of any witness. *Gifford v. Geosling*, 951 S.W.2d 641, 643 (Mo.App. W.D.1997).

Worm World presents two points on appeal. In its first point, it insists that the trial court's judgment in favor of Roark is not

---

1. A header card is the card attached to a plastic bag containing fishing lures.

2. The trial court did not award Roark the $2,588.12 it charged for freight.

supported by substantial evidence and is against the weight of the evidence. It contends that the "industry standard and prior dealings of the parties do not establish that Worm World was to provide composite film for the catalogue project," that the "evidence does not establish that the reasonable value of services provided to Worm World by Roark Printing equals $35,682.88," and that there "is no basis in the record for the trial court's finding that Worm World is entitled to a credit in the amount of only $5,000."

■ Worm World argues that the phrase "composite film furnished" in its contract with Roark meant that Roark was to provide the composite film, and that the cost of this film was a component of Roark's quoted price for the catalogue project. At trial, Worm World presented an expert witness, who testified that "composite film furnished" means, in the printing industry, that the printer is to furnish the composite film. In contrast, Mr. Carroll testified that he explained to Worm World's representatives that his quote for the catalogue project did not include the preparation of composite film, and that Worm World would have to provide it. Moreover, Worm World's prior dealings with Roark on the header card project also indicate that "composite film furnished" meant composite film furnished *by Worm World*, and that its failure to provide composite film would result in additional expense. Worm World acknowledges this evidence, but urges us to disregard it. We are unable to do so, however, under the applicable standard of review. The trial court was free to believe Mr. Carroll's testimony and the evidence of the header card project, and to disbelieve Worm World's expert. Its interpretation of the phrase "composite film furnished" is neither unsupported by substantial evidence nor against the weight of the evidence.

■ In its next attack on the trial court's judgment, Worm World contends that the evidence does not establish that the reasonable value of Roark's services was $35,682.88. It ignores the testimony of Roark's president, Ron Garmen, who stated that the reasonable value of Roark's services was $43,271, the amount requested on the invoice for the catalogue project. The trial court apparently derived its damage award from this figure, deducting the $2,588.12 freight charge, and giving Worm World the $5,000 credit for the undelivered catalogues. It did not err in relying on Mr. Garmen's testimony.

■ Finally, Worm World complains that it was given a credit of "only $5,000," which the trial court deducted in arriving at the amount of the judgment in favor of Roark. It argues that the trial court set out no basis for its determination of this credit, and asserts that it was unsupported by the record. Roark agrees that the record does not justify the credit, and argues that we should strike it and increase the judgment, although it did not appeal from the judgment and seek that relief. Where, as here, only one party appeals, we limit our review to the contentions raised by that party, and do not consider allegations of error raised by the respondent. *Sisco v. James*, 820 S.W.2d 348, 352 (Mo. App. S.D.1991). Thus, we do not consider Roark's request.

■ Although inartfully stated, Worm World's contention is that the credit was too little; not that we should eliminate the credit altogether. It fails, however, to cite any evidence that would require larger credit. In a court-tried case, the judgment is presumptively correct, and the appellant has the burden to demonstrate that the judgment is erroneous. *Wallace v. Hankins*, 606 S.W.2d 443, 444 (Mo.App. S.D.1980). Mere allegations in a brief do not prove themselves. *Suesserman v. Suesserman*, 539 S.W.2d 741, 743 (Mo.App.1976). As Worm World has failed to demonstrate that granting only a $5,000 credit was erroneous, this portion of the judgment must be sustained. *Id.*

In its second point on appeal, Worm World argues that the trial court's award of $14,103.94 to Berquist Armstrong is not supported by substantial evidence and is against the weight of the evidence. Specifically, it contends that the evidence indicated that there was no express contract between Berquist Armstrong and Worm World, that no evidence shows that Worm World actually received the archive photographs taken by

Berquist Armstrong, and that the evidence does not establish that any benefit received by Worm World from Berquist Armstrong's services had a reasonable value of $14,103.94.

In asserting that it had no express contract with Berquist Armstrong, Worm World points to the absence of direct dealings or correspondence with Berquist Armstrong, but ignores Roark's dealings with Berquist Armstrong on its behalf. According to Mr. Carroll, Worm World had initially agreed to provide the composite film for the catalogue project. When it became clear that it was not going to do so, Worm World instructed Mr. Carroll to find a photographer. Mr. Carroll hired Berquist Armstrong, and arranged for Berquist Armstrong to bill Worm World directly. At this point, Worm World did not know which lures it wanted to include in the catalogue, so it requested that Berquist Armstrong photograph all of its products. Photographs not used in the catalogue would be kept for Worm World's archives.

Contracts are created by promissory expression. *Westerhold v. Mullenix Corp.*, 777 S.W.2d 257, 263 (Mo.App. E.D. 1989). When the parties express their promises in explicit oral or written words, they create an express contract. *Id.* Here, via Mr. Carroll, Worm World retained Berquist Armstrong for photography services, specified what it wanted photographed, and made payment arrangements. The trial court was free to believe Mr. Carroll's account of these dealings, and its conclusion that an express contract existed between Worm World and Berquist Armstrong is supported by Mr. Carroll's testimony.

Worm World next argues that it never received the archive photographs from Berquist Armstrong, and that the evidence does not establish that the reasonable value of the benefit it received from Berquist Armstrong's services was $14,103.94. In making these arguments, Worm World assumes that no express contract existed, and that Berquist Armstrong's only avenue of recovery is quantum meruit. Having rejected this assumption, we need not address these contentions. We note in passing, however, that Richard Berquist, co-owner of Berquist Armstrong, testified that Berquist Armstrong gave the archive photographs to Mr. Carroll to deliver to Worm World, and that the prices Berquist Armstrong charged Worm World were fair and reasonable. Worm World's second point is denied.

The judgment of the trial court is affirmed.

PREWITT and CROW, JJ., concur.