**KEHRS MILL TRAILS ASSOCIATES,**
Plaintiff/Respondent,

v.

**KINGSPOINTE HOMEOWNER'S ASSOCIATION, Defendant/Third Party Plaintiff/Appellant,**

v.

**City of Clarkson Valley, Missouri,**
**Third Party Defendant.**

No. ED 90018.

Missouri Court of Appeals,
Eastern District,
Division One.

April 29, 2008.

Louis J. Basso, Louis J. Basso, P.C., Chesterfield, MO, for respondent.

Byron E. Francis, Brent M. Covington, Armstrong Teasdale LLP, St. Louis, MO, for appellant.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, a subdivision association, filed a petition against defendant, another subdivision association, to obtain specific performance of an obligation to contribute to a fund to maintain a common lake (Count I) and damages as a third party beneficiary for the breach of that obligation (Count II). Defendant filed a counterclaim for an equitable accounting and declaratory judgment, which it subsequently amended, and a third-party petition. The parties filed cross-motions for summary judgment. The dispositive issue on both Counts I and II was whether the Kingspointe lot owners validly amended the Kingspointe trust indenture to eliminate Kingspointe trustees' obligation to contribute to the lake maintenance fund. The trial court entered summary judgment in plaintiff's favor on Counts I and II, concluding that the plain language of Kingspointe's and Kehrs Mill Trails' indentures did not allow Kingspointe to amend its trust indenture to eliminate any obligation to contribute to the lake maintenance fund.[1] Defendant appeals.

## FACTUAL BACKGROUND

### The Kehrs Mill Trails Indenture

Plaintiff, Kehrs Mill Trails Associates (KMT), was a not-for-profit corporation charged with protecting, overseeing, and managing Kehrs Mill Trails, a residential subdivision in the City of Clarkson Valley in St. Louis County, Missouri. Kehrs Mill Trails was formed by a trust indenture (KMT Indenture) dated December 15, 1975. The recitals in the KMT Indenture indicated that the developer contemplated constructing one or more lakes in the subdivision. Article VII, section (3), of the KMT Indenture authorized the establishment of a lake maintenance fund, and provided in part:

---

1. The trial court also dismissed without prejudice for failure to prosecute all of the remaining counts in the petition, the counterclaim, and third-party petition. None of these dismissals is challenged on appeal.

(3) *LAKE FUND:* At the present time there is no governmental agency authorized to maintain the dams and spillways for lakes contemplated herein. In the absence of such an authority, it is the intention of the Developer to establish a fund to be contributed to by the lot owners, said fund to be for the care and maintenance of the dams and spillways of the lakes until such time, if ever, as this responsibility is assumed by some legally constituted public agency.

The Trustee is hereby authorized to set aside Fifty Dollars ($50.00) per lot from the annual assessment to create such a fund large enough to handle major repairs if it ever becomes necessary.

This section also relieved the trustee and lot owners from any further assessments if a public agency took over maintenance.

One of the parties to the KMT Indenture was the owner of a contiguous parcel of land known as the "Gabrielle Tract." Article IX of the KMT Indenture, entitled *"Gabrielle Tract,"* provided in subsection (3):

(3) With respect to a lake Developer proposes to Construct, located and encroaching partially on the land of Gabrielle and partially on the land of Clarkson, as shown by preliminary subdivision plat prepared by Mueller Surveying Company dated *November 25th,* 1975, Gabrielle and Clarkson hereby establish and grant unto Developer and Trustee, their respective successors and assigns, over the respective properties owned by Gabrielle and Clarkson, a perpetual easement for the construction, reconstruction, maintenance, and operation of said lake to the extent of such encroachment but not beyond the limits of United States Geologic Survey elevation datum 520. In any event, the record plat of Kehrs Mill Trails, Plat One, in which Gabrielle and Clarkson shall join, shall reflect said contour line and elevation and the easement parcel herein referred to shall be deemed to be the parcel identified on such plat as "Perpetual Lake Easement Parcel." The present and future owners of Gabrielle Tract and Clarkson Tract, shall have the obligation to maintain their respective properties to the extent that the properties of each abut the Perpetual Lake Easement Parcel, and up to the edge of the water of such lake as may exist thereon, but Trustee shall have the obligation to maintain the lake, the dam, and appurtenances thereto. In addition to the foregoing easement, Gabrielle and Clarkson grant unto Trustee, Developer, and their respective successors and assigns, an easement over their respective properties, for the purpose of effecting tests, surveys, and engineering studies, and for the construction of the lake contemplated herein, and thereafter for the purpose of performing the maintenance obligations to be kept and performed by Trustee hereunder.

Section (5) of Article IX further provided:

(5) To the extent that any lots are established of record by subdivision of any part of Gabrielle Tract and by subdivision of that part of Clarkson Tract lying west of a road known as Horseshoe Ridge shown on the plat of Kehrs Mill Trails, Plat One, the present and future owners of such lots, and their respective guests and invitees shall have the right to use and enjoy (in common with the lot owners of Kehrs Mill Trails Sub-divisions, the late [sic] contemplated by this Section IX) but only if such lot owners, by appropriate record instrument, subject all of such lots to the provisions of this Indenture insofar as same pertain to assessments for the maintenance of said lake and to the rules and regulations promulgated by the Trustees governing the use of said lake, failing which no owner of any record lot established by such subdivision

of Gabrielle Tract and of Clarkson Tract, nor any persons claiming under such owner shall have any right to use said lake.

*The Kingspointe Indenture*

Defendant, the Kingspointe Home-owner's Association (Kingspointe), was a not-for-profit corporation that oversaw and managed the residential subdivision of Kingspointe. The Kingspointe subdivision, a part of which was on the Gabrielle tract, was created by a trust indenture in 1987 (the "Kingspointe Indenture").

Article VII of the Kingspointe Indenture, entitled *"LAKE,"* governed Kingspointe's lake maintenance obligations. It recited that the land upon which the Kingspointe subdivision was platted was encumbered by the KMT Indenture with respect to the lake. It set out in full sections (3) and (5) of Article IX of the KMT Indenture, which related to the lake. It specifically made the Kingspointe lots subject to the KMT Indenture for lake maintenance:

By this Indenture all of the lots of Kingspointe Subdivision are made subject to the provisions of the aforesaid Kehrs Mill Trails Subdivision Trust Indenture insofar as same pertain to assessments for maintenance of said lake and to the rules and regulations promulgated by the Trustees governing the use of said lake.

In addition, Article VII authorized the trustees to pay into the lake maintenance fund:

The Trustees are hereby authorized and directed to set aside Fifty Dollars ($50.00) per lot from the annual assessment collected in Kingspointe Subdivision which shall be paid over annually during the last week of December of each year to the Trustees of Kehrs Mill Trails Subdivision in full compliance with the provisions of The Kehrs Mill

Trails Trust Indenture relating to the funding of the "Lake Fund" for the care and maintenance of said Lake, dam and appurtenances abutting Kingspointe Subdivision until such time, if ever, as such responsibility is assumed by some legally constituted public agency.

Also, Article VIII of the Kingspointe Indenture contained the procedure for amending the Indenture:

This Trust Indenture must at all times remain consist[e]nt with the provisions of The Kehrs Mill Trails Trust Indenture to which this subdivision is subject with regard to the lake in Article VII because this subdivision is subject to the provisions of The Kehrs Mill Trails Trust Indenture in that regard, however all other provisions of this Indenture of Trust and Restrictions and any part thereof may be altered, amended or discontinued by a written agreement signed by the then record owners of the fee simple title of two-thirds (2/3) of the inhabited lots in the Subdivision then encumbered by this Indenture. . . .

From 1988 to 2003, Kingspointe paid KMT a portion of the lake maintenance fee.

*The Kingspointe Amendment*

On January 12, 2004, the Kingspointe lot owners amended Article VII of the Kingspointe Indenture to eliminate the obligation of Kingspointe lot owners to contribute to the lake fund. The parties have stipulated that the Kingspointe lot owners followed the procedural requirements contained in the Kingspointe Indenture when the lot owners proposed, voted on, and passed the amendment and that Kingspointe did not request or seek KMT's approval for the amendment.

*DISCUSSION*

*Standard of Review*

We review the grant of summary judgment *de novo*. *ITT Commercial Fi-*

nance v. Mid–Am. Marine, 854 S.W.2d 371, 376, 387 (Mo. banc 1993). "Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *American Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2000). We will affirm a summary judgment if it is correct as a matter of law on any ground. *ITT*, 854 S.W.2d at 387–88.

For its sole point, Kingspointe contends that the trial court erred in granting summary judgment on Counts I and II because Kingspointe had no obligation to contribute to the lake fund in that (1) "the Kingspointe Indenture explicitly required lot owners [2] to contribute to the fund" only if the lot owners chose to use and enjoy the lake; (2) in accordance with the Kingspointe Indenture's provisions explicitly permitting amendment, Kingspointe validly amended the Indenture to eliminate the lot owners' ability to use and enjoy the lake; and (3) Kingspointe did not breach any of its contractual obligations to plaintiff by amending the Kingspointe Indenture. We address only the first argument contained in this point because it is dispositive. Further, the trial court did not base its judgment on the alternative grounds argued in the second and third parts of this point.

■■■■ "A covenant is simply an agreement between the grantor and grantee which requires the performance or the nonperformance of some specified duty with regard to real property, including an agreement to do or not to do a particular act." *Whispering Valley v. Franklin County Bank*, 879 S.W.2d 572, 574 (Mo. App.1994). " 'An affirmative covenant, as opposed to a restrictive one, does not restrict the use of land in question, but instead, imposes a duty on a party to the agreement to perform an affirmative act.' " *Webb v. Mullikin*, 142 S.W.3d 822, 826 (Mo.App.2004) (quoting *Hills v. Greenfield Village Homes Ass'n*, 956 S.W.2d 344, 348 (Mo.App.1997)). The imposition of the duty on the Kingspointe trustee to pay fifty dollars per lot annually for the maintenance of the lake is a promise to perform an affirmative act, and is thus an affirmative covenant. *Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309, 312 (Mo.App.1981).

■■■■ Principles of contract law apply to the interpretation of an affirmative covenant. *Webb*, 142 S.W.3d at 825. If the covenant is clear and unambiguous, the covenant is not subject to rules of "construction," and we determine intent from the plain language of the covenant. *Id.* at 826; *Saladin v. Jennings*, 111 S.W.3d 435, 441 (Mo.App.2003); *Parkton Ass'n v. Armstrong*, 878 S.W.2d 50, 53 (Mo.App.1994); *Lake Wauwanoka*, 622 S.W.2d at 313. To determine the parties' intent, we read the terms of the agreement as a whole and give each term its plain, ordinary, and usual meaning. *Dunn Indus. Group v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). We construe each term of a contract so as to avoid rendering other terms meaningless. *Id.* "A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *Id.* If the language is not ambiguous, we ascertain the parties' intent from the contract alone. *Id.* at 428–29.

Article VII of the Kingspointe Indenture requires the trustees to pay fifty dollars per lot annually to the lake fund for maintenance "until such time, if ever, as such responsibility is assumed by some legally constituted public agency." The

---

**2.** The Indenture imposes the obligation to contribute to the lake fund on the trustees, not the lot owners.

language of this covenant is clear and unambiguous. It leaves no doubt that the Kingspointe trustees had an ongoing obligation to maintain the lake and contribute fifty dollars per lot annually until the responsibility for maintenance was assumed by a public agency.

Kingspointe argues, however, that the Kingspointe lot owners "only have an obligation to contribute to the Lake Fund if they choose to 'use and enjoy' the Lake." It further asserts:

> The plain language of the Kingspointe Indenture provides that Kingspointe lot owners "shall have the right to use and enjoy ... the lake ... *but only if* such lot owners ... subject all of such lots to the provisions of [the KMT] Indenture insofar as same pertains to assessments for the maintenance of said lake." L.F. 197. It further provides that *"failing which* [i.e. if the Kingspointe owners do not participate in maintenance of the Lake] no owner of any record lot [in the Kingspointe Subdivision] ... shall have any right to use said lake." Id.

(emphasis in the brief).

This argument quotes portions of section (5) of Article IX of the KMT Indenture, which is repeated in full in Article VII of the Kingspointe Indenture, and is set out earlier in this opinion. Kingspointe's argument mischaracterizes the import of this section. The bracketed material, "i.e. if the Kingspointe owners do not participate in maintenance of the Lake," is not contained in section (5) and cannot be implied as the antecedent to which the words "failing which" refer. Rather, the antecedent for "failing which" is the election given to the Kingspointe lot owners to subject the lots to the KMT Indenture. There is no language in section (5) giving the Kingspointe lot owners any option after the lots were subjected to the KMT Indenture to not participate in the maintenance of the lake, or to avoid their obligations by making a choice in the future not to use or enjoy the lake.

Section (5) of Article IX of the KMT Indenture gave the Kingspointe lot owners the right to use and enjoy the lake only if they subjected all of the lots to the provisions of the KMT Indenture requiring assessments for maintenance, but if they failed to subject the lots to these provisions, they would have no right to use the lake. When the Kingspointe Indenture was subsequently executed, Article IX specifically made all of the Kingspointe lots subject to the KMT Indenture with respect to assessments for lake maintenance. Once this happened, the Kingspointe trustees were obligated to pay the assessed amounts to the lake fund.

■ The Kingspointe Indenture's amendment provisions also refute Kingspointe's argument that it could amend its indenture to terminate its obligations to contribute to the lake fund. We interpret the amendment provisions by considering the plain, usual, and ordinary meaning of the words used. *Pearce v. Scarcello,* 920 S.W.2d 643, 645 (Mo.App.1996). Article VIII of the Kingspointe Indenture requires that the Kingspointe Indenture "must at all times remain consist[e]nt" with the lake provisions of the KMT Indenture. Those provisions of the KMT Indenture require a fifty dollar per lot annual contribution. The Kingspointe Indenture further allows Kingspointe to amend only the "other provisions" of the indenture by written agreement. The language in the amendment clause is clear and unambiguous. The Kingspointe Indenture must remain consistent with the lake provisions of the KMT Indenture, which require the fifty-dollar-per-lot annual maintenance fee. The Kingspointe Indenture does not allow Kingspointe to amend those provisions of the Kingspointe Indenture relating to the lake, but only

allows the "other," that is, the "non-lake," provisions of the KMT Indenture to be amended.

The trial court did not err in concluding that Kingspointe's amendment of its Indenture in a manner inconsistent with the lake provisions in the KMT Indenture was invalid. Point one is denied.

The judgment of the trial court is affirmed.[3]

ROBERT G. DOWD, JR., J. and KENNETH M ROMINES, J., concur.

---

3. Plaintiff requests that we assess damages and order defendant to pay $9,810. Plaintiff did not file a cross-appeal challenging the trial court's failure to award damages. In these circumstances, in the absence of a cross-appeal, we limit our review to the claims of the appellant, and do not consider allegations of trial court error raised by the respondent. *Kelly v. Hanson*, 959 S.W.2d 107, 112 (Mo. banc 1997); *Roark Printing, Inc. v. Worm World, Inc.*, 974 S.W.2d 613, 616 (Mo.App.1998).