

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| KEVIN ROWAN, | ) | |
| | ) | |
| Respondent, | ) | WD76265 |
| | ) | |
| vs. | ) | Opinion filed: April 8, 2014 |
| | ) | |
| COVES NORTH HOMES | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF PLATTE COUNTY, MISSOURI
### THE HONORABLE JAMES WALTER VAN AMBURG, JUDGE

Before Division Three: Anthony Rex Gabbert, Presiding Judge,
Victor C. Howard, Judge and Thomas H. Newton, Judge

Coves North Homes Association, Inc. (Association) appeals the trial court's judgment in favor of Kevin Rowan after a trial de novo on Mr. Rowan's claim against the Association for breach of covenant. The judgment is reversed.

### Background

The Coves North Subdivision in Platte County consists of single-family residences, patio homes, and townhouses. The Appellant Association is the homes association for the subdivision and is charged with operating under and enforcing the terms and conditions of the recorded Declaration of Covenants, Rights and Restrictions of the Coves North Subdivision (Declaration).

Mr. Rowan owns a townhouse in the subdivision. He filed an action in small claims court against the Association seeking $1996.38, the cost to replace the deck outside his townhouse. He alleged that the Association had a duty under the Declaration to replace the deck. The small claims court entered judgment in Mr. Rowan's favor for $1996.38 plus costs. The Association filed a motion for trial de novo. After judgment was entered in favor of the Association, Mr. Rowan hired counsel and filed a motion for new trial, which was granted.

Thereafter, Mr. Rowan filed a first amended petition. He alleged that the Association breached the terms of the Declaration by failing to repair his townhouse deck and/or refund the cost of the repair. He sought $1996.38, the cost of the repair. He further requested attorney's fees and punitive damages. Following a bench trial, the trial court entered judgment in favor of Mr. Rowan awarding him $1996.38 plus costs and $3442.50 in attorney's fees. This appeal by the Association followed.

**Motion Taken With the Case**

Before the briefs were filed in this appeal, the Association filed a motion to determine appellate jurisdiction in its own appeal, which was taken with the case. It questions whether the trial de novo judgment was null and void, and in turn whether this court is deprived of appellate jurisdiction, because its motion for trial de novo was untimely filed under section 482.365, RSMo 2000. The Association filed its motion for trial de novo nine days after entry of the small claims judgment but did not pay the filing fee. The clerk of the court returned the motion to the Association for lack of a filing fee, and it refiled its motion with the filing fee on the eleventh day after the judgment. Mr. Rowan argues that the Association's challenge to the trial de novo after losing and being ordered to pay his attorney's fees in that proceeding was waived and is patently unjust.

2

Whether the Association waived the issue need not be decided because even if the issue was not waived, the trial court had authority to conduct the trial de novo, and this court has jurisdiction to hear this appeal. This court has general appellate jurisdiction in all cases not within the exclusive jurisdiction of the Missouri Supreme Court. Mo. CONST. art. V, sec. 3. This includes subject matter jurisdiction to determine whether the trial court correctly or incorrectly exercised its authority. *Dorris v. State*, 360 S.W.3d 260, 265 (Mo. banc 2012).

Section 482.365.2 confers the right of trial de novo to a party aggrieved by a small claims judgment. Rule 151.01. It sets out the statutory requirements to have the right to trial de novo:

> The right to trial de novo shall be perfected by filing an application for trial de novo with the clerk of the small claims court within ten days after the judgment is rendered.

§ 482.365.2. Section 482.365.2 makes no reference to the payment of a filing fee to perfect the filing of an application for trial de novo. *See State ex rel. JCA Architects, Inc. v. Schmidt*, 751 S.W.2d 756, 757 (Mo. banc 1988) and *C&F Invs., LLC v. Hall*, 149 S.W.3d 557, 558 (Mo. App. E.D. 2004)(noting that section 512.190.1, which provides the right to trial de novo in certain circumstances, makes no reference to payment of filing fee to perfect the right). A trial court is without power to impose requirements in addition to those set out in the statute. *Id.* While a filing fee is required, payment at a particular time is not a prerequisite to perfect the right to trial de novo. *See Id.*[1] Here, the Association's filing of its motion for trial de novo nine days after entry of the small claims judgment was in full compliance with all statutory requirements. The trial court had authority to proceed with the trial de novo even though the filing fee was not paid until two days later after the time for filing the application for trial de novo had expired, and this court has appellate jurisdiction in this appeal.

---

[1] "Such conclusion does not preclude the trial court from imposing sanctions on litigants who do not comply with the statutes and rules." *C&F Invs.*, 149 S.W.3d at 558 n.3 (citing *Schmidt*, 751 S.W.2d at 757).

**Standard of Review**

In a bench-tried case, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Recsnik v. Ret. Time Ins., LLC*, 361 S.W.3d 9, 11 (Mo. App. E.D. 2009)(citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The interpretation of a contract is reviewed *de novo*. *Id.*

**Points on Appeal**

The Association raises four points on appeal. First, it claims that the small claims court and the trial court did not have authority over Mr. Rowan's equitable action for specific performance. Second, it contends that the trial court erred in entering judgment in favor of Mr. Rowan because the Declaration contained no provision requiring it to maintain or repair Mr. Rowan's deck. Third, the Association argues that the trial court erred in granting Mr. Rowan leave to file his first amended petition because the petition improperly contained additional claims to that heard in the small claims court. Finally, it contends that the trial court erred in awarding attorney's fees to Mr. Rowan. Because the second point is dispositive, the other points are not addressed.

The Declaration contains two provisions that govern the exterior maintenance and repair of townhouses. The first is Article VI, §13, which applies to all of the owners in the subdivision:

> Except as specifically provided herein, each Owner at the Owner's sole expense shall keep the exterior of the Owner's building structure, including but not limited to doors, walls, windows, roofs, patios and other improvements, in good maintenance and repair.

Article IV, §3(A)(2)(b) provides an exception to Article VI, §13. In that article, the Association is responsible for certain exterior maintenance of townhouse or duplex living units:

4

Additionally, the services to be provided to the Owners of townhouses or duplex living units shall include the exterior maintenance of each townhouse or duplex living unit, as follows: paint, repair, replace and care for roofs, gutters, downspouts and exterior building surfaces including the pointing of brick. Such exterior maintenance shall not include glass surfaces.

"A covenant is simply an agreement between the grantor and grantee which requires the performance or the nonperformance of some specified duty with regard to real property, including an agreement to do or not to do a particular act." *Kehrs Mill Trails Assocs. v. Kingspointe Homeowner's Ass'n*, 251 S.W.3d 391, 396 (Mo. App. E.D. 2008)(internal quotes and citation omitted). "An affirmative covenant, as opposed to a restrictive one, does not restrict the use of land in question, but instead, imposes a duty on a party to the agreement to perform an affirmative act." *Id.* (internal quotes and citation omitted). Although Article VI is labeled "Restrictions," §13 of that article does not restrict the Owners' use of their land but imposes an affirmative duty on them to maintain the exteriors of their building structures. Likewise, Article IV, §3(A)(2)(b) is an affirmative covenant imposing an affirmative duty on the Association to provide exterior maintenance of townhouse and duplex living units. *See Hills v. Greenfield Village Homes Ass'n, Inc.*, 956 S.W.2d 344, 348-49 (Mo. App. W.D. 1997)(provision of homes association agreement similar to Article IV, §3(A)(2)(b) was affirmative covenant).

"Principles of contract law apply to the interpretation of an affirmative covenant." *Kehrs Mill Trails*, 251 S.W.3d at 396. *See also Hills*, 956 S.W.2d at 349. The primary rule of contract interpretation under Missouri law is that a court will seek to determine the parties' intent and give effect to that intent. *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013). The parties' intent is determined by giving each term its plain, ordinary, and usual meaning. *Id.*; *Kehrs Mill Trails*, 251 S.W.3d at 396. The dictionary is a good source for finding the plain and ordinary meaning of contract language; but the contract's context must be

5

considered in applying the appropriate dictionary definition. *Bailey v. Federated Mut. Ins. Co.*, 152 S.W.3d 355, 357 (Mo. App. W.D. 2004). "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms. The mere fact that the parties disagree over a contract's meaning does not render the contract ambiguous." *Jackson County v. McClain Enters., Inc.*, 190 S.W.3d 633, 640 (Mo. App. W.D. 2006)(internal quotes and citation omitted). If the covenant is clear and unambiguous, the covenant is not subject to rules of construction, and intent is determined from the plain language of the covenant alone. *Kehrs Mill Trails*, 251 S.W.3d at 396; *Hills*, 956 S.W.2d at 349.

The affirmative covenants in this case are not ambiguous alone or when read together. Article VI, §13 plainly provides that the owners shall keep the exterior of their building structures in good maintenance and repair unless the Declaration specifically provides an exception. Under the covenant, doors, walls, windows, roofs, patios and other improvements are included in the owners' responsibility for the exterior of their building structures, but such responsibility is not limited to those things.

In entering judgment in favor of Mr. Rowan, the trial court determined that Article IV, §3(A)(2)(b) "imposes a duty on [the Association] to maintain and/or repair any improvements to the townhouse owned by [Mr. Rowan]." Specifically, it found that the Association is responsible for the exterior maintenance of townhouse units and that Mr. Rowan's deck is part of the exterior of the townhouse. The trial court, however, disregarded the phrase in Article IV, §3(A)(2)(b) that specifically identifies what exterior maintenance the Association is obligated to undertake. In particular, the article provides that the Association is responsible for "the exterior maintenance of each townhouse or duplex living unit, *as follows: paint, repair, replace and care for roofs,*

6

*gutters, downspouts and exterior building surfaces including the pointing of brick.*" (emphasis added). "As follows" means "as will next be told or explained, " WEBSTER'S NEW WORLD COLLEGE DICTIONARY 549 (4th ed. 2002), or "as will be stated next—used to introduce a specified enumeration, explanation, or command." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 683 (4th ed. 2006). Within Article IV, §3(A)(2)(b), the phrase "as follows" introduces what exterior maintenance the Association is obligated to provide. Unlike in Article VI, §13, under the plain and ordinary meaning of this article, the Association is obligated to maintain only those things specifically enumerated.

It is clear that a deck is not a roof, gutter, or downspout. The question is whether it is included in "exterior building surfaces." "Exterior" is defined as "on the outside; outer: outermost [an exterior wall]." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 503 (4th ed. 2002). "Building" is defined as "anything that is built with walls and a roof, as a house or factory; structure." *Id.* at 192. Finally, "surface" is defined as "the outer face, or exterior, of an object." *Id.* at 1440. Based on the dictionary definitions of the individual terms, the plain and ordinary meaning of the phrase "exterior building surfaces" is the outer face of the townhouse structure itself. A deck is not an outer face of the townhouse structure and, therefore, is not an exterior building surface. It is not covered under Article IV, §3(A)(2)(b).[2] The trial court erred in ruling that the Association has a duty under the Declaration to maintain or repair Mr. Rowan's deck. *See also Schler v. Coves North Homes Ass'n*, WD75983, slip op. at 6-7 (Mo. App. W.D. April 8, 2014)(townhouse patio, porch, and steps are not exterior building surfaces and, thus, are

---

[2] The trial court also found that in a prior declaratory judgment, it had found that the Association is responsible for the exterior maintenance of townhouse units. In that prior proceeding, the Association filed an action for declaratory judgment to determine its obligations under the Declaration to Mr. Rowan and other townhouse owners. In its judgment, the trial court found that the Association is financially responsible for exterior maintenance of townhouses as set out in Article IV, §3(A)(2)(b), setting out verbatim the article. The declaratory judgment did not, however, interpret the article or declare that the Association was responsible for any specific repair. Consequently, the declaratory judgment does not provide any support in this case.

7

not covered under Article IV, §3(A)(2)(b)).  The judgment awarding Mr. Rowan damages and attorney's fees is reversed.

_____

VICTOR C. HOWARD, JUDGE

All concur.