The BOARD OF EDUCATION OF The CITY OF ST. LOUIS and Central Parking of St. Louis, Respondents,

v.

Gregory F.X. DALY, License Collector of the City of St. Louis, Appellant.

No. ED 82655.

Missouri Court of Appeals, Eastern District, Division One.

March 9, 2004.

Patricia A. Hageman, City Counselor, Edward J. Hanlon, Deputy City Counselor, St. Louis, MO, for appellant.

Kenneth C. Brostron, Rhonda A. O'Brien, Kevin L. Fritz, Lashly & Baer, P.C., St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Gregory F.X. Daly, License Collector of the City of St. Louis ("License Collector"), appeals from the grant of summary judgment entered by the Circuit Court of the City of St. Louis in favor of respondents, the Board of Education of the City of St. Louis and Central Parking of

St. Louis (individually "Board" and "Central Parking"). We reverse and remand.

The Board is a body corporate, a political subdivision of the State of Missouri, and a metropolitan school district established pursuant to section 162.571 RSMo (2000).[1] The Board employs about 6,000 people around St. Louis and has its main headquarters at 801 North 11th Street. About 400 employees work at the headquarters building. Adjacent to its headquarters, the Board owns a parking garage at 911 North 11th Street ("Garage").

The Garage has the capacity for approximately 415 vehicles and it provides parking for: 1) Board employees working in the headquarters building, 2) Board employees from other sites visiting the headquarters building, 3) visitors and guests conducting business with or otherwise furthering the educational mission of the Board, and 4) users unrelated to the Board or its business ("Unrelated Parkers").

The Board sets the amount of parking fees for all users, determines the Garage's hours of operation, and designates parking priorities. The Board is solely responsible for making all repairs to the Garage and curbs and sidewalks adjacent thereto, carrying fire and elevator insurance, and ensuring compliance with all governmental regulations and requirements. All of the land, structures, and equipment of the Garage are owned by the Board. The Board bears the risk of loss if the expenses of operation exceed the gross receipts, and it receives any profits from the Garage.

Central Parking manages ingress and egress from the Garage for the Board in return for compensation from the Board. Central Parking must render to the Board a complete accounting of all receipts and disbursements each month. Central Parking collects payment from Unrelated Parkers and checks the parking passes and validations of Board employees and visitors. Pursuant to its management agreement with the Board, Central Parking receives a minimum monthly fee of $500 plus a percentage of the gross revenues or receipts. Gross revenues, as defined in the management agreement, include: 1) revenues received by Central Parking or the Board, 2) the value of all discounted, validated, and free parking granted by the Board for parking in the Garage, and 3) income from vending machines, pay telephone commissions, and other income approved by the Board. However, since approximately July 2001, the Board and Central Parking have informally agreed the value of validated free parking from visitors conducting business with the Board will no longer be included in the calculation of gross revenues for the purpose of computing Central Parking's compensation.

The parties stipulated to all of the above facts.

This case began when License Collector advised the Board and Central Parking that the value of all parking must be reported as gross receipts even though no fee is charged and no money exchanges hands in some instances. License Collector attempted to impose the City of St. Louis' license tax on the value of: 1) all the Board employee parking provided at no charge to employees, 2) validation stickers that are provided by the Board at no charge to the user, 3) all Board employee parking for which employees pay the Board through payroll deduction,[2] and 4) all monies collected by Central Parking from Unrelated Parkers.

---

1. All further statutory references are to RSMo 2000, unless otherwise indicated.

2. Central Parking never receives these sums.

Because Central Parking handles the taxes under the management agreement, it paid the license tax under protest after the License Collector told Central Parking that it should impute to users not actually paying Central Parking an amount of gross receipts upon which it should then remit the 5% gross receipts tax. The Board had Central Parking pay these amounts under protest each quarter since September 30, 2000. The total amount claimed by the Board when this case was submitted to the trial court was $31,976.13; however, this amount has continued to increase as the tax is paid under protest each subsequent quarter.

On January 14, 2003, the trial court granted summary judgment finding for the Board and Central Parking because License Collector was without authority to impose the gross receipts license tax on any of the four categories of parkers. This finding was based upon the fact that the Garage was owned and operated by the Board. Therefore, License Collector was ordered to return to the Board all of the gross receipts license tax paid under protest by Central Parking.

■ On appeal, License Collector concedes that he cannot impose the license tax on the Board, and as a result the only group of users at issue are the Unrelated Parkers, whose money is collected by Central Parking on behalf of the Board.

By agreement of the parties, this matter was removed from the trial docket and submitted to the trial court on dispositive motions and memoranda, which were submitted together with a joint proposed statement of facts, a joint stipulation regarding disputed facts, an affidavit of the treasurer of the Board, and other documentary evidence, including a description of the categories of Garage-users and the management agreement according to which Central Parking managed the Garage for the Board.

The briefs of the parties indicate that there is confusion as to the standard of review to be applied in this case. The Supreme Court applies the summary judgment standard of review to an appeal from a judgment granting summary judgment upon stipulated facts. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo.banc 1988). As a result, we review the trial court's judgment under our summary judgment standard of review.

When reviewing a grant of summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). Our review is essentially de novo. *Id.* We will uphold the trial court's judgment if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 381. The moving party has the burden to show it has a right to judgment as a matter of law and that there is no genuine issue of material fact. *Id.* at 378. Because the parties in this case have stipulated to the facts, the only question before us "is whether the trial court drew the proper legal conclusion from the facts." *Perry State Bank v. Farmers Alliance*, 953 S.W.2d 155, 157 (Mo.App. W.D.1997).

In his sole point on appeal, License Collector argues the trial court erred in finding Central Parking was not required to pay the city's gross receipts tax on Unrelated Parkers who make payment directly to Central Parking in order to park at the parking garage owned by the Board because the city's license tax is imposed on Central Parking for the privilege of doing business in the city.

In order to evaluate License Collector's argument, we must construe St. Louis City

Revised Code sections 8.76.010 through 8.76.090, the ordinances imposing a tax on operators of a parking garage.

We cannot take judicial notice of ordinances not contained in the record on appeal. *Union Center Redev. v. Preservation Bd.*, 75 S.W.3d 784, 786 (Mo.App. E.D.2002). The absence of the ordinance from the record is fatal and invalidates the judgment of the trial court. *Schneider v. Housing Bd. of Appeals*, 969 S.W.2d 873, 875 (Mo.App. E.D.1998). The ordinances upon which the case rests are an essential element of proof and must be before the court either by formal presentation or by stipulation. *City of Kansas City v. Baker*, 793 S.W.2d 646, 648 (Mo.App. W.D.1990)

The Board and Central Parking allege in a footnote that the parties stipulated to the ordinance and that they provided the trial court with photocopies of the ordinance "in the presence of and with tacit consent of [License Collector]" at trial. There is nothing in the record to support this latter claim. Further, we note that although there are exhibits attached to several motions in this case, the ordinances are not included among these exhibits. The ordinances are not contained in the record. We find that there is insufficient evidence in the record before us to support the Board and Central Parking's claim that the ordinances were formally presented to the trial court.

The stipulation that the Board and Central Parking refer to provides that "... License Collector has imposed a License Tax upon the gross receipts of the parking lot operation pursuant to St. Louis City

Revised Code §§ 8.76.010 through 8.76.090, inclusive. The License Tax is imposed upon Gross Receipts at the rate of 5%. *See* St. Louis City Revised Code, § 8.76.040." Based on the above, it is impossible to tell whether the ordinances authorize License Collector to impose a License Tax on either the Board or Central Parking. The stipulation tells us a tax was imposed, but it does not aid our inquiry into whether the tax was properly imposed. As a result, this stipulation is insufficient because the terms of the ordinances are not included in the record.[3] *See University City v. MAJ Investment Corp.*, 884 S.W.2d 306, 308 (Mo.App. E.D. 1994) *and City of Kansas City*, 793 S.W.2d at 648 (where our colleagues found the record must contain the ordinances themselves and a mere reference to a chapter or section was inadequate).

Therefore, we reverse the judgment of the trial court and remand this cause for further proceedings.

ROBERT G. DOWD, JR. and MARY R. RUSSELL, JJ., concur.

3. The Board and Central Parking do include the ordinances in the appendix of their brief. However, ordinances attached to a brief as appendices cannot be considered by an appellate court. *Duly v. Heflin*, 873 S.W.2d 932, 935 (Mo.App. W.D.1994). In addition, Eastern District Rule 365 clearly provides that excerpts from the record may be included in the appendix only if the excerpts are properly filed and made a part of the record in accordance with Rule 81. In this case, the ordinances have not been filed as part of the record.