

# Missouri Court of Appeals

### Southern District

#### Division Two

TOM M. ROBERTSON, IAFF LOCAL )
2618, ADAM GRINES, LARIN )
TRENARY, and DANIEL JOBE, )
)
    Plaintiffs-Respondents, )
)
vs. )        No. SD32475
)
POLICE AND FIREMEN'S PENSION )
PLAN OF CITY OF JOPLIN, TRUSTEES )    **Filed: Feb. 5, 2014**
OF POLICE AND FIREMEN'S PENSION )
PLAN OF CITY OF JOPLIN, and CITY )
OF JOPLIN, MISSOURI, )
)
    Defendants-Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable David B. Mouton, Circuit Judge

### REVERSED AND REMANDED WITH INSTRUCTIONS

This case is an appeal from an amended judgment ("the judgment") entered by the

circuit court after its review of the decision of an administrative agency under the

Missouri Administrative Procedure Act ("MAPA"). *See* section 536.010 *et. seq.*[1] The

issue in dispute is the appropriate calculation of retirement benefits due certain Joplin

firefighters who suffer a job-related or "duty" disability under Joplin's city ordinance

---

[1] References to sections 536.090 and 536.150 are to RSMo 2000. All other statutory references are to RSMo Cum. Supp. 2012.

providing a retirement plan for police officers and firefighters.[2] Defendants Police and Firemen's Pension Plan of Joplin ("the Plan"), Trustees of Police and Firemen's Pension Plan of City of Joplin ("the Board"), and the city of Joplin ("City") appeal the judgment in favor of Plaintiffs Tom M. Robertson, IAFF Local 2618, Adam Grimes, Larin Trenary, and Daniel Jobe on Count I of Plaintiffs' amended petition ("the petition").

The judgment reversed the Board's determination of Robertson's pension benefit, declaring that the Plan provides that a duty disability pension benefit "is a 50% benefit[.]" In accordance with that declaration, the judgment ordered that Robertson be paid $10,978.43 for "past due duty disability benefits[,]" plus accrued interest, and "that Joplin firefighters who become disabled in the line of duty shall receive a benefit equal to 50% of their salary as calculated in accordance with the formula in the pension ordinances, but not reduced based upon years of service less than 20[.]" The Board had awarded Robertson a lower benefit amount -- 37.5% of his "average monthly compensation" -- by reducing the benefit for years of service less than 20.

Defendants present four points of alleged error: (1) the circuit court erroneously applied the law in that "the plain and ordinary meaning of the [P]lan's language cannot reasonably be interpreted as granting an employee 50% of his average monthly compensation without an adjustment based upon years of service"; (2) alternatively, the circuit court "erroneously applied the law" in finding the Plan's language unambiguous because it "can reasonably be interpreted as requiring a reduction in duty-disability benefits for employees who have served fewer than twenty years"; (3) the circuit court "misapplied the law . . . in the [P]lan and [MAPA]" by not "defer[ring] to the Board's

---

[2] The case was decided on competing motions for summary judgment. The parties have agreed that Ordinance 2009-001 ("the Ordinance") codifies the current version of the retirement plan, and copies of the Ordinance were incorporated into the parties' respective factual averments.

2

reasonable interpretation of the ambiguous provision"; and (4) the circuit court erred in denying Defendants' motion for summary judgment on Count III because substantial evidence "does not support a finding that the Board has violated section 5.08 of [City's] charter."

We agree that the Plan language at issue is unambiguous, but we must reverse the judgment because that unambiguous language provides that a duty disability benefit is equal to 50% of the employee's salary reduced 1/20th for each year of service less than 20.

**Background**

Robertson had been a City firefighter for 15 years and 11 months as of January 2011, when he was injured while on duty. He was thereafter declared disabled, and the Board awarded him "$1,448.80 as a monthly duty-disability benefit award . . . which represents 37.5% of his Average Monthly Compensation."[3] In calculating the benefit, the Board "appl[ied] a reduction of benefits clause, based upon Section 3.1 of the Plan." We set forth and review the text of the applicable sections of the Plan in the analysis portion of our opinion, *infra*.

The Board is composed of City's mayor, two citizens of City, two "actively employed Covered Employees of the Police Department, . . . and . . . [two] actively employed Covered Employees of the Fire Department[.]" The Ordinance provides that the police officer and firefighter members are to be elected by a majority vote of their respective departments. The Board "may, at any time, recommend that the Plan be amended for any reason." Any amendment to the Plan must be "approv[ed] by the

---

[3] In May 2011, the Board reconsidered the matter and entered the same award that it made in February 2011.

3

Participants[4] (by majority vote of those voting with respect to the amendment), and final ratification by the City Council."

Count I of the petition sought a declaration that "Robertson is entitled to a 50% benefit, which would result in a monthly payment to [him] of $1,931.74[,]" that Robertson be awarded a judgment for unpaid benefits, and that the circuit court declare "that firefighters who become disabled in the line of duty shall receive a benefit equal to 50% of their salary" which is "not reduced based upon years of service less than 20[.]" Count II of the petition was stated in the alternative to Count I, and it sought a determination of benefits based upon 15 years and 11 months of service as opposed to 15 years of service.

Count III of the petition sought a declaration that Defendants' interpretation of the Plan was invalid as it violated City's charter, and it sought damages for City's "wrongful actions[.]" Counts IV and V sought declarations that City had violated Robertson's contractual rights under, respectively, article VI, section 13 of the Missouri Constitution and Article I, Section 10 of the United States Constitution, and sought damages for said violations. Count IV further averred that there was a 1993 vote on the Plan that "changed the duty disability provisions from those previously existing and as described in all the actuarial valuation reports to the position that has now been advocated by [City's attorney] to the [Board]" and if such an interpretation is correct, then there would be "an interference with [Robertson]'s constitutionally protected contractual rights to his proper pension benefits." Count V incorporated this additional allegation and further contended that City was acting as a state actor for purposes of Title 42 U.S.C. section 1983.

---

[4] Under Ordinance section 1.21, a "PARTICIPANT" means "any Covered Employee who is or becomes eligible to participate in the Plan[.]"

4

Plaintiffs and Defendants each sought summary judgment on counts I and III, and Robertson sought "summary judgment on liability only on [c]ounts IV and V[.]" After the filing of statements of uncontroverted facts and responses thereto, the parties argued their positions to the circuit court, and their counsel agreed that there were no disputed facts. In their earlier proceedings before the Board, the parties had agreed "that only legal issues were present, and that there was no need for an evidentiary hearing before the [Board], but the matter would be decided as a matter of law following presentations to the Board by legal counsel."

Both sides argued in their pleadings that the terms of the Plan were unambiguous, but they differed as to whether section 3.1(A)(1)(b) controlled the determination of Robertson's duty disability retirement benefits. Relying on section 5.1(B) of the Plan, Robertson claimed that duty-disabled retirees were "entitled to receive a duty-disability benefit equal to 100% of their normal retirement benefit without any reduction in benefits based upon years of service." Plaintiffs argued that their position was "further bolstered" by comparing section 5.1(B)'s provision "for duty disability benefits to the language for the calculation of non-duty disability benefits under [section] 5.2(B)" because "[a]ny other interpretation . . . renders no difference in the amount of benefits for a participant who suffered a duty disability versus a non-duty disability."

In the judgment, the circuit court found that the Plan was "not ambiguous, is clear, and can be interpreted as a matter of law without reference to outside facts and without reference to other documents." It entered summary judgment in favor of Plaintiffs on Count I, and it found counts II and III to be moot as a result of its resolution of Count I.

The circuit court did not decide counts IV and V "given the Declaratory Judgment awarded regarding Count I." This appeal timely followed the entry of the judgment.

*A preliminary matter regarding appellate jurisdiction*

"Rule 74.01(b)[5] permits the circuit court to designate a final judgment 'as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.'" ***Duncan v. Missouri Alliance for Children & Families***, 387 S.W.3d 389, 391 (Mo. App. W.D. 2012). The trial court made that express determination here, but "[t]his court must independently decide whether the judgment certified under Rule 74.01 actually qualifies as a final judgment for purposes of appeal." ***Id***. The trial court's "designation is effective only when the order disposes of a distinct 'judicial unit.'" ***First Cmty. Credit Union v. Levison***, 395 S.W.3d 571, 576 (Mo. App. E.D. 2013) (quoting ***Gibson v. Brewer***, 952 S.W.2d 239, 244 (Mo. banc 1997)).

Here, the circuit court found that there was "no just reason for delay" and certified the judgment as final for purposes of appeal pursuant to Rule 74.01(b). In support of its certification, the trial court found, *inter alia*, that

    c.    The Court's judgment was based solely upon the language of the [Plan] and no extrinsic evidence was considered.

        . . . .

    e.    The only claims remaining for the court's consideration are Counts IV and V which allege [Robertson] has suffered an unconstitutional impairment of his contractual rights under the federal and state constitutions.

        . . . .

    h.    Determination of the constitutional claims will require consideration of additional facts which the Court has not yet considered including whether [Robertson] had a

---

[5] Unless otherwise indicated, all rule references are to Missouri Court Rules (2013).

6

contractual right that is protected by the federal and state constitutions, and if so, whether and to what extent Defendants have impaired this right.

    i.    The case does not remain pending in this Court as to all the original parties as [Robertson] is the only plaintiff asserting the constitutional claims in Counts IV and V.

    j.    The relief sought by Counts IV and V is different from that granted by the Court's judgment in that those counts seek redress for constitutional injury whereas the Court's judgment simply declares [w]hat the proper interpretation of the [Plan]'s language is.

"Whether the circuit court properly entered and certified the partial summary judgment as appealable affects our jurisdiction." *Duncan*, 387 S.W.3d at 391.

> In determining if a judgment disposing of less than all claims is final, this court must look to the claim that is the subject of the judgment and decide whether it constitutes one single, yet complete, claim. *See Committee for Educational Equality v. State*, 878 S.W.2d 446, 451 (Mo. 1994). The term "one claim" constitutes "the aggregate of operative facts which give rise to a right enforceable in the courts." *Id.* Claims are "separate," however, "if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action." *Id.*

*Fischer v. City of Washington*, 55 S.W.3d 372, 377-78 (Mo. App. E.D. 2001).

Here, the judgment decided Count I on the merits and found that counts II and III were thereby moot. We find that the remaining counts present claims which are separate and distinct from the claim decided in the judgment. Counts IV and V allege that if the meaning of the Plan regarding duty disability benefits changed in 1993, then there would be "an interference with [Robertson]'s constitutionally protected contractual rights to his proper pension benefits." Proof of facts regarding what change, if any, was made in 1993 and whether the City qualified as a State actor were not required for the trial court to determine the meaning of the Plan as it was in effect at the time Robertson became

7

disabled.  Indeed, the trial court decided the summary judgment "based solely upon the language of the [Plan] and no extrinsic evidence was considered."  The resolution of the constitutional claims will require proof of facts wholly irrelevant to the claim decided in the instant judgment.  Further, the law applicable to the constitutional claims differs from that applicable to the proper interpretation of the Plan.  As a result, the pending constitutional claims were rightly seen by the trial court as a separate judicial unit, and we have appellate jurisdiction over this appeal.

### Applicable Principles of Review and Governing Law

*Standard of Review in the Circuit Court*

The parties agree that this case should be reviewed as a noncontested administrative case under MAPA.  "Actions which are delegated by a municipality to a board or retained to itself to enforce an ordinance are administrative and are reviewable under [MAPA]."  *Wrenn v. City of Kansas City*, 908 S.W.2d 747, 749 (Mo. App. W.D. 1995).

> The key to the classification of a case as contested or noncontested is the requirement of a hearing.  *Cade* [*v. State*, 990 S.W.2d 32,] 36[ (Mo. App. W.D. 1999)].  The term "hearing," as used in section 536.010(2) means a proceeding at which a "measure of procedural formality" is followed.  *Hagely v. Board of Educ. of Webster Groves School Dist.*, 841 S.W.2d 663, 668 (Mo. banc 1992).  Procedural formalities in contested cases generally include: notice of the issues (section 536.067); oral evidence taken upon oath or affirmation and the cross-examination of witnesses (section 536.070); the making of a record (section 536.070); adherence to evidentiary rules (section 536.070); and written decisions including findings of fact and conclusions of law (section 536.090).

*City of Valley Park v. Armstrong*, 273 S.W.3d 504, 507 (Mo. banc 2009) (footnote omitted).

8

We agree that the circuit court's review was of a noncontested case because significant procedural formalities outlined in *Armstrong* are absent from section 7.6 of the Plan. 273 S.W.3d at 507. Section 7.6, entitled "CLAIMS PROCEDURE," empowers the Board "to govern and control the hearing, [and to make] consideration and disposition of all claims, and other administrative matters and proceedings before such Board."[6] Section 7.6 further provides:

> The [Board] shall have exclusive original jurisdiction to receive, hear and rule upon all claims for benefits from the Fund [held by the Board] and to hear and determine all such claims in the first instance. The decision of the [Board] shall be in writing, and the Board shall take and preserve the evidence on any disputed claim and such evidence, records, finding and decision of the Board shall be subject to judicial review by certiorari or other proper legal procedure with the full right of appeal from the decision of the reviewing court on appeal, as in other civil cases.

Notably absent are requirements for "notice of the issues[,]" "oral evidence taken upon oath or affirmation[,]" "cross-examination of witnesses[,]" and "adherence to evidentiary rules[.]" *Id.* Significantly, section 7.6 does not describe the precise procedure a claimant must use to request and obtain a hearing, and it does not clearly indicate whether the holding of such a hearing is mandatory or discretionary. *Cf. Hunter v. Madden*, 565 S.W.2d 456, 459 (Mo. App. St.L.D. 1978) (holding that language in an ordinance that the board for fire protection district "may" hold hearings was a grant of discretion, not a requirement that a hearing be held). We find that because there are so few procedural formalities for a hearing spelled out in the Plan, a formal hearing was not required, and the matter constituted a noncontested case for purposes of judicial review.

---

[6] This section also requires that the Board's rules and regulations be "not inconsistent with State Laws, or this Plan, or City Ordinance No. 19655," but it does not appear that City Ordinance No. 19655 is a part of the record on appeal. "We cannot take judicial notice of ordinances not contained in the record on appeal." *Board of Educ. of City of St. Louis v. Daly*, 129 S.W.3d 405, 408 (Mo. App. E.D. 2004).

9

We do not agree with Defendants' further unqualified contention that "a court reviewing a noncontested case is not permitted to 'substitute its discretion for discretion legally vested in the agency[,]'" quoting section 536.150.1.[7] It is true that under section 536.150.1 a trial "court shall not substitute its discretion for discretion legally vested in the administrative agency." *Missouri Nat'l Educ. Ass'n v. Missouri State Bd. of Educ*., 34 S.W.3d 266, 274 (Mo. App. W.D. 2000). But only "[u]ncontested cases *for which no other method of judicial review is provided* are subject to judicial review under [s]ection 536.150[.]" *State, ex rel. Nance v. Board of Trs. for Firefighters' Ret. Sys. of Kansas City, Mo.*, 961 S.W.2d 90, 92 (Mo. App. W.D. 1998) (emphasis added).

Here, section 7.6 of the Plan -- codified by the Ordinance -- provides that Board decisions are "subject to judicial review by certiorari or other proper legal procedure[,]"

---

[7] Section 536.150.1 provides:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, *and there is no other provision for judicial inquiry into or review of such decision*, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; *but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.*

(Emphasis added.)

10

and it provides "the full right of appeal from the decision of the reviewing court on appeal, as in other civil cases."[8]

*Standard of Review on Appeal*

"The court of appeals reviews the decision of the circuit court in a noncontested case as in other court-tried cases, applying the standards established in ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976)." ***State ex rel. Valentine v. Board of Police Comm'rs of Kansas City***, 813 S.W.2d 955, 957 (Mo. App. W.D. 1991).[9]  The judgment from a court-tried case is therefore sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." ***Murphy***, 536 S.W.2d at 32; ***Missouri Nat'l Educ. Ass'n***, 34 S.W.3d at 274-75.  We review *de novo* both a trial court's grant of summary judgment and questions of statutory interpretation. ***Rice v. Shelter Mut. Ins. Co.***, 301 S.W.3d 43, 46 (Mo. banc 2009); ***State, ex rel. Nixon v. Premium Standard Farms, Inc.***, 100 S.W.3d 157, 161 (Mo. App. W.D. 2003).

**Analysis**

*Point I*

Defendants' first point asserts that the trial court erred in applying the law because the Plan "cannot reasonably be interpreted as granting an employee 50% of his average monthly compensation without an adjustment based upon years of service."  We agree.

---

[8] Moreover, even if section 536.150.1 were applicable, it would apply to the exercise of the Board's discretion in determining *factual* matters; it would not grant discretion to the Board in resolving questions of law.  Cf. ***Thiemann v. Columbia Pub. Sch. Dist.***, 338 S.W.3d 835, 838 (Mo. App. W.D. 2011) (interpretation of school district's self-funded insurance plan was a question of law reviewed *de novo*).

[9] "The review of a contested case is a review by the trial court of the record created before the administrative body. Section 536.140. The trial court's decision upon such review is appealable, but the appellate court also looks back to the record created before the administrative body." ***Furlong Cos. v. City of Kansas City***, 189 S.W.3d 157, 165 (Mo. banc 2006).

11

"In interpreting a city ordinance, we are to apply the same rules that are used in interpreting a state statute." ***BBCB, LLC v. City of Independence***, 201 S.W.3d 520, 527 (Mo. App. W.D. 2006). "Ordinances are interpreted based on a review of the whole ordinance." ***City of Univ. City v. AT & T Wireless Servs.***, 371 S.W.3d 14, 19 (Mo. App. E.D. 2012).[10] "If the ordinance is clear and unambiguous when the terms used are given their legislative definition or their plain and ordinary meaning, then there is no room for construction and the courts must give effect to the statute as written." ***Cousin's Adver., Inc. v. Board of Zoning Adjustment of Kansas City***, 78 S.W.3d 774, 779 (Mo. App. W.D. 2002).

"We will look beyond the plain meaning of the statute and to the rules of statutory construction only when the language is ambiguous or would lead to an absurd or illogical result." ***City of Univ. City***, 371 S.W.3d at 19. "When a statute is open to differing, but reasonable, interpretations, it is ambiguous." ***Allright Props., Inc. v. Tax Increment Fin. Comm'n of Kansas City***, 240 S.W.3d 777, 780 (Mo. App. W.D. 2007). "The language of a statute or ordinance leads to "absurd or illogical results" when there is a complete contradiction in the language or when two statutory provisions cannot be harmonized." ***City of Univ. City***, 371 S.W.3d at 20.

With these legal standards in mind, we now turn to examine the Plan language at issue, starting with the relevant portions of section 5.1.

5.1    DUTY DISABILITY BENEFIT

(B)    Benefit Amount

---

[10] "In interpreting ordinances, the appellate court gives words their plain and ordinary meaning, by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory, or oppressive results." ***Firemen's Ret. Sys. of St. Louis v. City of St. Louis***, 911 S.W.2d 679, 680 (Mo. App. E.D. 1995).

The duty disability benefit payable to a Covered Employee is a monthly benefit equal to one hundred percent (100%) of the Covered Employee's monthly normal retirement benefit described in Section 3.1. If, at the time a Covered Employee qualifies for duty disability benefits, he has fewer than: (1) twenty (20) years of Credited Service, if hired on or before January 31, 2009; or (2) twenty-five (25) years of Credited Service, if hired after January 31, 2009, the Covered Employee shall receive an additional ten percent (10%) of his monthly normal retirement benefit for his Eligible Spouse and for each Qualified Child, but with an overall maximum benefit of one hundred and thirty percent (130%) of his monthly normal retirement benefit.

Any benefit payable under this Section shall be adjusted pursuant to Section 5.4 as applicable. [Section 5.4 addresses "PROOF OF CONTINUING DISABILITY[.]"]

The pertinent portions of section 3.1 provide:

3.1     NORMAL RETIREMENT

A Participant may retire on or after his Normal Retirement Date, and payment of the retirement benefit shall be governed by the following provisions:

(A) Benefit Amount:

(1)     The monthly normal retirement benefit of a Participant hired on or before January 31, 2009, shall be equal to fifty percent (50%) of the Participant's Average Monthly Compensation, adjusted, as applicable, in accordance with the following:

(a)     For each year of Credited Service in excess of twenty (20), the Participant shall receive an additional benefit of one percent (1%) of Average Monthly Compensation, up to a maximum total benefit of sixty-five percent (65%) of Average Monthly Compensation.

(b)     If the Participant has less than twenty (20) years of Credited Service, the benefit shall be reduced by one-twentieth (1/20) for each year less than twenty (20) years.

13

Section 1.19 provides that the normal retirement date is set at "[a]ge 60" or, for those hired on or before January 31, 2009, "the completion of twenty (20) years of Credited Service."  Credited Service includes "the total time in complete and fractional years (based on the number of months) during which the Employee is a Covered Employee and makes the contribution required" elsewhere in the Plan.  Section 1.14.

Section 5.2(B) specifically governs *non*-duty disability benefits and provides:

5.2    NON-DUTY DISABILITY BENEFIT

    (B)    Benefit Amount

        The non-duty disability benefit for a Covered Employee with fewer than: (1) twenty (20) years of Credited Service, if hired on or before January 31, 2009; or (2) twenty-five (25) years of Credited Service, if hired after January 31, 2009, shall be a monthly benefit equal to two and one-half percent (2 1/2% ), plus one-half of one percent (1/2%) for his Eligible Spouse and for each Qualified Child, of the Covered Employee's monthly normal retirement benefit described in Section 3.1 for each full year of the Covered Employee's Credited Service, with an overall maximum of four percent (4%) of the Covered Employee's monthly normal retirement benefit for each full year of his Credited Service.

Applying the plain and ordinary meaning of section 5.1(B)'s reference to section 3.1 results in a duty-disability benefit which adjusts downward for an employee hired on or before January 31, 2009 who has less than 20 years of service.  Plaintiffs contend that this result is not consistent with the effect of section 5.2(B) concerning non-duty related disability because the same result would be reached under 5.1(B) and 5.2(B) regardless of the characterization of the disability.  We disagree.

The amounts afforded to an Eligible Spouse and Qualified Child are different for duty and non-duty disabilities.  For a duty disability under section 5.1(B), the disabled

14

employee would receive an additional ten percent (10%) for an Eligible Spouse and each Qualified Child, "with an overall maximum benefit of one hundred and thirty percent (130%) of his monthly normal retirement benefit." For a non-duty related disability under section 5.2(B), the benefits added on account of an Eligible Spouse and Qualified Child are limited to one-half percent each and "an overall maximum of four percent (4%) of the Covered Employee's monthly normal retirement benefit for each full year of his Credited Service."[11]

Further, Plaintiffs make no cogent argument as to why it would be illogical or absurd for both types of disability to receive the same basic benefit under the Plan. Instead, they argue canons of statutory construction disfavoring interpretations that would render language superfluous or result in unnecessary repetition. In doing so, they cite *Davidson v. Missouri State Treasurer as Custodian of Second Injury Fund*, 327 S.W.3d 583, 587 (Mo. App. S.D. 2010) (en banc) ("[w]hen interpreting a statute, our primary aim is to ascertain the intent of the legislature from the language used and give effect to that intent, remembering that 'every word of a statute is presumed meaningful'") (quoting *Gott v. Director of Revenue*, 5 S.W.3d 155, 158 (Mo. banc 1999)). They also cite the statement in *Tuft v. City of St. Louis*, 936 S.W.2d 113, 117 (Mo. App. E.D. 1996) (quotations omitted), that "[t]he general rules of statutory construction require that meaning be given to each word used in the legislative enactment, insofar as possible and one word of the statute should not be considered a needless repetition of another." But the court in *Tuft* did not apply any rules of statutory construction. Instead, it found the

_____

[11] The difference between the treatment of duty and non-duty disability benefits is further revealed in section 3.10 of the Plan, which provides that "the duty disability benefit pursuant to Section 5.1 . . . shall not exceed the difference between any worker's compensation payment received by the [covered employee] for the same . . . disability and . . . the Covered Employee's Average Monthly Compensation."

ordinance at issue to be unambiguous and noted that "when the language is unambiguous, the reviewing court is afforded no room for construction." *Id.* at 118-19; *see also **Long v. Interstate Ready-Mix, L.L.C.**,* 83 S.W.3d 571, 576 (Mo. App. W.D. 2002) ("[w]here the language of the statute is clear and unambiguous, there is no room for construction").

When the language is unambiguous, the role of the court is simply to apply the plain and ordinary meaning of the terms used unless doing so produces an absurd or illogical result. *See **City of Univ. City**,* 371 S.W.3d at 19. Here, as earlier noted, Plaintiffs have failed to demonstrate why it would be absurd or illogical for the Plan to treat all disabled employees similarly except for differences in benefits related to an eligible spouse or qualifying child and offsets for workers compensation payments. The sections do not repeat each other; they provide different benefits depending on whether the disability is a duty or non-duty disability.

Plaintiffs also argue that "[i]f [Section] 5.1(B) was simply meant to refer to the normal retirement benefit as adjusted by [Section] 3.[1](A)(1) and (2), then the term '100%' would be rendered superfluous." Again, such an argument has no place when an ordinance requires no construction and is capable of being applied as written. *See **City of Univ. City**,* 371 S.W.3d at 19. And the term "one hundred percent (100%) of the Covered Employee's monthly normal retirement benefit described in Section 3.1" has meaning. As written, "100%" means the entire or full benefit as calculated by the application of section 3.1, which plainly includes a sub-section (A)(1)(b) that requires a reduction of that "starting point" benefit when a person hired on or before January 31, 2009 has provided less than 20 years of service.

16

Plaintiffs also argue (as the judgment found) that if the same reduction is applied to section 5.2(B) for non-duty disability as applied to section 5.1(B) for duty disability, then benefits for a non-duty disability would be reduced yet again so as to leave that benefit reduced 1/20 times 1/20 for each year less than 20 years of service and thereby "result in a maximum non-duty disability benefit of 2.4% (19/400 x 50% = 2.4%) of his or her Average Monthly Compensation for any firefighter with less than 20 years of service." Arguments about the meaning of section 5.2(B) ignore the fact that section 5.1(B) -- governing duty disabilities -- is worded differently than section 5.2(B), which addresses non-duty disabilities. It is beyond the scope of this appeal to interpret the meaning of section 5.2(B) as applied to a case involving a non-duty disability. As Defendants point out in their reply brief, to the extent that section 5.2(B) may be ambiguous, that does not mean that section 5.1(B) -- the subsection applicable in this case -- is ambiguous. And it is not necessary to construe sections 5.1(B) and 5.2(B) together in order to determine how a *duty* disability benefit is calculated under the Plan.

In considering whether the unambiguous language of the Plan produces an illogical or absurd result, it must also be remembered that amendments to the Plan may be recommended at any time by the Board -- of which firefighters and police officers comprise the majority -- and the proposed amendment must be approved by a majority vote of the Participants before it is presented for ratification by City Council. Unlike scenarios in which the beneficiaries of a retirement plan have no control or input in the drafting of the language describing the benefit, here those who stand to benefit from the provisions of the Plan actually control the majority of the seats on the Board. And, as Defendants point out, if the Board had intended "for an employee to receive 50% of his

Average Monthly Compensation regardless of years of service, Section 5.1 could plainly have said so." Finally, the provision made by section 5.1(B) for awarding an individual's duty disability pension does not exist in a vacuum; the Board must consider the overall solvency and security of the Plan such that all promised benefits are actually available to those who are entitled to receive them.

We therefore find that applying section 3.1 as section 5.1(B) plainly directs does not lead to an absurd or illogical result. Point I is granted.[12]

### Decision

Counts II and III of Plaintiffs' petition -- previously found moot by the trial court based on its erroneous resolution of Count I -- are no longer moot. The judgment is reversed, and the case is remanded for further proceedings on counts II, III, IV, and V, all in accordance with the opinion of the court rendered herein.

DON E. BURRELL, J. - OPINION AUTHOR

GARY W. LYNCH, J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS

---

[12] Our resolution of Point I renders moot Defendants' alternative Point II. Point III, which claims that we must defer to the Board's discretion under section 536.150.1, is also moot and will not be addressed beyond our discussion, *infra*, of any effect it might have on the applicable standard of review. Point IV contends the trial court erred in denying Defendants "summary judgment on Count III because its decision was not based on substantial evidence[.]" Specifically, they assert "that the record does not support a finding that the Board has violated section 5.08 of the City Charter." The trial court did not address Count III because it found the claim moot in light of its ruling on Count I. As a result, Defendants' Point IV fails because its premise is incorrect -- Defendants' motion for summary judgment was not denied on its merits. Given our reversal on Point I, Count III is no longer moot and will again be at issue upon remand.

18