Clyde M. ROBERTS, et al., for and on behalf of themselves and all others similarly situated, Appellants,

v.

CITY OF MARYVILLE, et al., Respondents.

In re the Petition of the CITY OF MARY-VILLE, Missouri, for a Pro Forma Decree, City of Maryville, Respondent,

v.

Clyde M. ROBERTS, et al., Appellants.

No. 69658.

Supreme Court of Missouri, En Banc.

May 17, 1988.

David A. Sosinski, Donald W. Giffin, Kansas City, for appellants.

Ronald L. Blunt, Kansas City, Scott Ross, Maryville, for respondents.

RENDLEN, Judge.

This cause was transferred after opinion in the Missouri Court of Appeals, Western District, that we might examine the extent of municipal powers to enter cooperative ventures with other entities in the planning, development, acquisition or operation of any public improvement or facility or for a common service.

Maryville (City), a city of third class, maintains a water system serving City residents and customers in the Nodaway County Water Supply District. The City sought a pro forma decree declaring the validity of $4 million in revenue bonds for the "Mozingo Creek Watershed Project" to expand and improve its municipal water supply. Appellants, citizens of Maryville, filed their

petition in a separate action to enjoin the City from using bond funds on the project because the plan calls for a cooperative effort among the City, the State Department of Natural Resources (DNR) and the U.S. Soil Conservation Service (SCS).[1] Further, appellants point to the fact that the plan (which requires expenditure of somewhat more than $9,000,000) has three purposes: municipal water supply, recreation and flood control, two of which are beyond the scope of the City's powers. The suits were consolidated for trial and remain so in this appeal.

On land condemned by Maryville, within four miles of the city limits, a small stream known as Mozingo Creek would be dammed and a reservoir created. The trial court in declaring the bond issue a valid and binding obligation of the City and dismissing appellants' petition for injunctive relief found the City's present water supply from the "102 River" has not been sufficient during times of drought and that the proposed project would provide adequate water to meet the City's needs through the year 2030. The court further found the City's share under the plan approximates 59% of land costs and 52% of construction costs for the dam and reservoir and in return, the City will receive from the project 66% of the permanent water pool and the remainder of the water will be available to the City for emergency use. DNR will operate the recreational facilities on the land provided by the City, and flood and erosion control measures will be provided by federal monies through the SCS. Of importance here, state and federal monies will supplement the City's share of the cost of the dam and reservoir, and

the City's contribution is "substantially equal" to the cost of the water supply aspect of the project, and the bond proceeds will not be used for the recreation or flood control purposes of the project. An examination of the record reveals these findings are supported by substantial evidence.[2] We affirm.

Section 250.100, RSMo 1986, empowers a city, upon favorable vote of the people, to issue revenue bonds for improvement or extension of its waterworks, and it is emphasized in Chapter 250 that the law granting cities powers relative to water and sewer systems "shall be liberally construed." Section 250.240. Also pertinent to our discussion, Section 88.633.2 empowers third class cities to condemn land beyond their boundaries for use as waterworks and Section 77.530 prescribes 10 miles as the limit of this authority; as noted above, the land here acquired lies less than four miles from the City.

■ Appellants first contend the trial court erred in finding the City possessed authority to participate in the Cooperative Agreement. The Missouri Constitution of 1945, art. VI, § 16, authorizes municipalities to participate in cooperative agreements with other entities in providing public improvements, facilities or common services. The full text of § 16 is:

Any municipality or political subdivision of this state may contract and cooperate with other municipalities or political subdivisions thereof, or with other states or their municipalities or political subdivisions, or with the United States, for the planning, development, construction, acquisition or operation of any public im-

1. Other entities participating in the project include: Nodaway County Soil and Water Conservation District; Mozingo Creek Watershed Subdistrict; and County of Nodaway.

2. Although conflicts in the testimony and the welter of documentary evidence makes exact apportionment of the project cost somewhat uncertain, it may be safely said the City's contribution to the joint venture will substantially equal the cost of the water supply aspect of the project. To satisfy the City's future needs, a reservoir with a capacity of 10,222 acre feet is required. Under the cooperative plan, a reservoir of 24,877 acre feet will be created of which

not less than 10,222 acre feet will be allocated to the City, and the additional storage capacity of the reservoir available for emergency use constitutes a vital safety factor for the City's water needs. Nothing in the evidence demonstrates that if the City proceeded alone it could possibly acquire a reservoir of this capacity for the money it is committed to spend. Thus, we may conclude that the monies derived from the bonds, together with anticipated interest income and a modest contribution from the City's water fund will be devoted only to the development of the water supply aspect of the facility.

provement or facility, or for a common service, in the manner provided by law.

"The purpose of the constitutional provision is to enable municipalities and political subdivisions to effect economies and facilitate the performance of their related public functions although actual consolidation of the governmental agencies is not feasible." *School District of Kansas City v. Kansas City*, 382 S.W.2d 688, 692 (Mo. banc 1964); *See also Cape Motor Lodge, Inc. v. City of Cape Girardeau*, 706 S.W.2d 208, 213 (Mo. banc 1986). Soon after the effective date of the 1945 Constitution, the general assembly implemented § 16 of article VI by adopting what are now sections 70.210 to 70.320, RSMo 1986. *See St. Louis Housing Authority v. City of St. Louis*, 361 Mo. 1170, 239 S.W.2d 289, 293 (1951). Section 70.220 provides:

> Any municipality or political subdivision of this state, as herein defined, may contract and cooperate with any other municipality or political subdivision, or with an elective or appointive official thereof, or with a duly authorized agency of the United States, or of this state, or with other states or their municipalities or political subdivisions, or with any private person, firm, association or corporation, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; *provided, that the subject and purposes of any such contract or cooperative action made and entered into by such municipality or political subdivision shall be within the scope of the powers of such municipality or subdivision.* If such contract or cooperative action shall be entered into between a municipality or political subdivision and an elective or appointive official of another municipality or political subdivision, said contract or cooperative action must be approved by the governing body of the unit of government in which such elective or appointive official resides. (Emphasis ours.)

The first portion of the enabling provision substantially tracks (except for the addition of the list of eligible entities) the language of the authorizing constitutional provision. However, the emphasized proviso contains language not found in article VI, § 16 and this, appellants claim, limits the grant of power flowing to municipalities from the Constitution.

If appellants' argument is taken to its ultimate conclusion, the venture must be limited to other than those activities which the municipality might undertake if acting alone. The plan, according to appellants, may not include an obligation on the part of other contracting entities to contribute monies, materials or labor to enhance the project, though for a purpose within the scope of the cooperating entities' authority, unless such purpose lies also within the range of purposes which the City alone could undertake. The trial court rejected appellants' argument and concluded the City was empowered to enter the cooperative agreement and employ the bond funds for development of the waterworks at Mozingo Creek, and that the City's portion of the project was limited to a purpose permitted it by statute. Significantly, the City's funds, as noted above, will be employed only for land acquisition and construction costs of the dam and reservoir, and indeed it is anticipated some state and federal funds will assist the City in this portion of the venture. Admittedly, the City may not obligate itself to provide recreation and flood control on land beyond its limits, but it appears the contract does not call for it so to do. To narrowly construe § 70.220 as urged by appellants would constrict the cooperative efforts between Missouri governmental entities in a manner not envisaged by § 16 of Art. VI and thwart the intendment of the statutory section. The General Assembly, by enacting § 70.220, is deemed to have acted with an intent to conform and further the constitutional purpose. *State v. Walden*, 357 Mo. 167, 206 S.W.2d 979, 985 (1947). It seems readily apparent the wholesome purpose of all this is to allow government within the framework of the law to provide better service at less cost and in this instance the cooperating governmental entities have agreed to a plan designed to fit that purpose. Each participating entity could separately plan

and construct its discrete portion of the project, but at a total cost exceeding that of the joint effort. The pooling of resources not only promotes cooperation among governmental agencies, it permits cost saving and avoids duplication of facilities.

■ Appellants further contend that if it is determined the City has the power to *enter* the cooperative agreement, it nevertheless lacks authority under Chapter 250, RSMo, to appropriate the proceeds of the bond issue[3] to fund its share of the costs of the project. In so arguing, appellants incorrectly assume some portion of the bond proceeds will be used to fund the recreational and flood control aspects of the project which lie beyond the City's powers.

Authority to issue the bonds in question arises from § 250.100, RSMo, authorizing a city to issue revenue bonds "for the improvement, or extension, or both, of its existing . . . combined waterworks and sewerage system."[4] There is no serious challenge to the fact that a reservoir of 10,222 acre feet is reasonably necessary to meet the City's needs. The cost of a reservoir if undertaken without the assistance provided by the cooperative agreement would approximate the amount available from the bonds and other City funds, and because those funds are only to "extend and improve" the City's water system that meets its reasonable needs and with additional capacity sufficient for times of emergency the requirements of § 250.100 are

satisfied. Incidentally, the City and its residents will most certainly benefit from the contributions of the other cooperating entities, including flood control and the recreational opportunities provided by the project, but these fortunate consequences are neither necessary nor material to the validity of the bonds.

■ Appellants' final challenge to the legitimacy of the City's participation in the project is that non-Maryville city residents will receive benefits from the recreational and flood control aspects of the project. "A municipal purpose is one which comprehends all activities essential to the comfort, convenience, safety and happiness of the citizens of the municipality," *Cape Motor Lodge*, 706 S.W.2d at 214. The citizens of Maryville will be the direct recipients of the improved water system and it is that for which they obligate themselves. Benefits to nonresidents of a city are incidental and do not deprive the city's actions of its municipal purpose so long as there is a direct benefit to the residents of the city, *id.*, and the fact that the residents of Maryville and others in the region may benefit from other aspects of the project is of no consequence here, nor does it deprive the project of its public character. *Id.; see also Vrooman v. City of St. Louis*, 337 Mo. 933, 88 S.W.2d 189, 193 (1935). Similarly, the fact that many but not necessarily all residents may benefit is no impediment to finding a public purpose, for it is not required that the entire community "actually use or be bene-

---

3. On February 2, 1982, the voters of the city approved a $4,000,000 bond issue to extend and improve the combined waterworks and sewerage system of the city. On December 16, 1985 the city council passed an ordinance authorizing the bond issue and providing that the bond proceeds will be contributed to a fund consisting of the bond proceeds and monies from certain of the other cooperating entities for the purpose of funding the Mozingo Project. Issue of the bonds has been delayed pending disposition of the petition for proforma decree.

4. The full text of § 250.100 reads:
   Any such city, town or village shall have the power, subject to a favorable vote at an election called and held as herein provided, to issue revenue bonds for the improvement or extension or both of its existing waterworks

or its existing sewerage system or its existing combined waterworks and sewerage system for the purpose of serving a particular locality, and such revenue bonds may be payable from the revenues derived or to be derived from the operation of the entire waterworks or sewerage system of the city, town or village or the entire combined waterworks and sewerage system or may be payable from the revenues to be derived from the operation of the waterworks, sewerage system or combined waterworks and sewerage system in such particular locality, as may be set forth in the proposition submitted at said election, provided, however, that the pledge of such revenues shall be subject to any prior pledge thereof.

fited by a contemplated improvement." *Cape Motor Lodge*, 706 S.W.2d at 213.

The judgment of the trial court is affirmed.

All concur.