Alfred J. FISCHER, Nancy A. Fischer, Alfred G. Fischer, Shirley M. Fischer, Ralph A. Riegal, Eugene Kleekamp, Rose Kleekamp, James G. Hillermann, Mary Jo Hillermann–Marquart, Russel Mayer, Rosalie Mayer, Roger Koch, Doris Koch, Betty J. Smith, Edward H. Jasper, Karen Jasper, Mark Jasper, John Joseph Jasper and Dean O. Jasper, Respondents.

v.

CITY OF WASHINGTON, Missouri, Appellant.

Nos. ED 78429, ED 78465.

Missouri Court of Appeals, Eastern District, Division Two.

June 5, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 16, 2001.

Application for Transfer Denied Sept. 25, 2001.

Mark C. Piontek, Lewis, Rice & Fingersh, L.C., Washington, MO, for appellant.

David L. Baylard, Gordon Rolla Upchurch, Baylard, Billington & Dempsey, P.C., Union, MO, for respondent.

JAMES R. DOWD, Judge.

◼ This is an appeal from the grant of Plaintiff landowners' motion for Partial Summary Judgment. The petition upon which judgment was granted alleged that an agreement between the City of Washington and Franklin County was invalid and that a resolution passed by the city was an illegal exercise of the city's power as granted by statute and the Missouri Constitution. The trial court granted summary judgment, declaring the agreement invalid, but denied summary judgment as to the resolution. On review of a trial court's grant of summary judgment we view all evidence and reasonable inferences in favor of the non-moving party to determine if a genuine issue of material fact exists. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993).

On April 8, 1996, the City of Washington, acting by and through their City Council, entered into a cooperative agreement with Franklin County. The two governments agreed to cooperate in the planning, construction and operation of a proposed public road that would run, at least in part, over county land. The City agreed to: (1) hire and employ all professionals necessary to determine the feasibility of the road; (2) incur all costs of construction; (3) notify the county as soon as possible after the location of the road was identified; and (4) coordinate with any person, developer or entity who proposed to build any structure or development within the proposed corridor. The county agreed to: (1) inform the city of any proposed developments that were to be located within the proposed corridor; and (2) proceed with condemnation in the name of the County as requested by City in order to acquire any right of way for the road that the City was not otherwise able to acquire.

In furtherance of this agreement, on July 13, 1998 the City's Planning and Zoning Commission adopted resolution No. 98–8476. The resolution added a general schematic of the proposed roadway to the City's "Comprehensive Plan" for future development. It included the Commission's recommendation as to the proposed route of the road and identified in general the lands over which it was to travel. The resolution was recorded in the office of the

Recorder of Deeds of Franklin County, Missouri, on June 13, 1998.

On January 29, 1999, some, but not all of the landowners over whose land the road would traverse filed a petition in the Franklin County Circuit Court. The petition alleged that both the agreement and the resolution were unlawful and unauthorized, that recording the resolution slandered and adversely affected title to their property and that the action of the County and the City resulted in an unconstitutional taking and inverse condemnation of their property. They requested that the trial court declare the agreement and the resolution unlawful, that the court enjoin the City and the County from taking action in connection with the proposed road and that the court order them to strike the agreement and resolution from their public records. The landowners also sought damages for inverse condemnation, attorneys' fees and costs. Both the City and County denied the allegations of the petition.

On June 17, 1999, landowners filed a motion for partial summary judgment, arguing that they were entitled as a matter of law to an order striking the resolution from the Records of the Recorder of Deeds and holding the cooperative agreement null and void. The City filed a response to this motion, arguing that both the agreement and the resolution were lawful and authorized under Missouri law. In particular, the City argued that Article VI, Section 16 of the Missouri Constitution and § 70.220 [1] allowed the city to enter into cooperative agreements with the County as long as the subject and purpose of the agreement were within the City's scope of powers.

Article VI, Section 16 of the Missouri Constitution authorizes cooperation by local governments with other governmental units. It reads:

> Any municipality or political subdivision of this state may contract and cooperate with other municipalities or political subdivisions thereof, or with other states or their municipalities or political subdivisions, or with the United States, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law.

Section 70.220 implemented Section 16 of Article VI. *See St. Louis Housing Authority v. City of St. Louis,* 361 Mo. 1170, 239 S.W.2d 289, 293 (banc 1951). Section 70.220 provides, in relevant part:

> Any municipality or political subdivision of this state, as herein defined, may contract and cooperate with any other municipality or political subdivision ... for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; *provided, that the subject and purposes of any such contract or cooperative action made and entered into by such municipality or political subdivision shall be within the scope of the powers of such municipality or subdivision.*

(emphasis added).

The City relies on § 71.340 for the proposition that road construction, even outside the city limits, was within their powers. Section 71.340 reads, in relevant part:

### Construction and repair of public roads—annual appropriation

> The mayor and city council of any city ... shall have the power to annually appropriate and pay out of the treasury of such city or incorporated town

---

1. All statutory references are to RSMo 1994, unless otherwise specified.

or village a sum of money, not to exceed ten percent of the annual general revenue thereof, for the purpose of constructing, building, repairing, working, grading or macadamizing any public road, street and highway and any bridge thereon leading to and from such city or incorporated town or village; ... the money so appropriated shall be applied under the supervision and direction of the engineers of such city or incorporated town or village, and of the county highway engineer of the county in which such city, town or village is located, ... but this privilege shall not extend to a greater distance than five miles from the corporate limits of such city, town or village ...

The City also alleged that the resolution was lawful and authorized pursuant to § 89.310 et. seq. It claims that § 89.310 et. seq. authorized the city to adopt the resolution as a means of planning for the City's future growth.

The trial court granted summary judgment in part, holding that the agreement between the City of Washington and Franklin County was "unlawful, unauthorized, null, void and of no force and effect." The trial court denied summary judgment as to the resolution. The court then, in accordance with Rule 74.01(b), determined that there was no just reason for delay and the judgment in its entirety was final for purposes of immediate appeal.

The City now appeals this judgment. It argues that the court erred in ruling the agreement null and void as a matter of law because Article VI, Section 16 of the Missouri Constitution and § 70.220 granted Washington authority to enter into the agreement. The landowners disagree and argue that the court properly found the agreement null and void but that the court erred in denying their motion for summary judgment seeking a declaration that the resolution was also invalid.

*The City's Appeal*

Whether raised by the parties or not this court has a duty to determine sua sponte whether it has jurisdiction. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). In order to have jurisdiction to review a lower court's judgment, there must be a final, appealable judgment. *Id.* "An appealable judgment resolves all issues in a case, leaving nothing for future determination." *Id.* If the trial court's judgment is not final, this court is without jurisdiction to consider the appeal, and the appeal must be dismissed. *Id.*

In cases involving multiple claims, however, a trial court can, under Rule 74.01(b), enter judgment on fewer than all of the claims and certify the judgment for appeal by finding that there is "no just reason for delay." *Id.* Yet even when the trial court certifies its judgment as final for purposes of appeal the trial court's determination is not conclusive. *Id.* "It is the content, substance, and effect of the order that determines finality and appealability." *Id.* This court must decide if the certification of the grant of partial judgment actually qualifies as a final judgment. *Morris v. Patterson*, 549 S.W.2d 613, 614 (Mo.App.1977).

In determining if a judgment disposing of less than all claims is final, this court must look to the claim that is the subject of the judgment and decide whether it constitutes one single, yet complete, claim. *See Committee for Educational Equality v. State*, 878 S.W.2d 446, 451 (Mo.1994). The term "one claim" constitutes "the aggregate of operative facts which give rise to a right enforceable in the courts." *Id.* Claims are "separate," however, "if they require proof of different facts and the application of distinguishable

law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action." *Id. See also Creel v. Union Electric Company, Inc.,* 950 S.W.2d 315, 317 (Mo.App.1997).

■■■■ The Supreme Court addressed this issue in *Gibson,* where it stated that "a judgment is final only when it disposes of a distinct 'judicial unit.'" *Gibson,* 952 S.W.2d at 244, The Court defined "judicial unit" as follows:

> The required "judicial unit for an appeal" has a settled meaning: the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim. An order dismissing some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation. It is "differing," "separate," "distinct" transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim.

*Id.* (internal citations and quotations omitted).

■■■■ Here, the landowners' challenge to the cooperative agreement is a distinct judicial unit, severable from their attack against the resolution. The cooperative agreement and the resolution are differing, separate and distinct documents; one a resolution passed by the city government, the other a contract between the City and the County. Further, the two complaints involve the application of distinct bodies of law; the landowners' claim against the agreement concerns whether Article VI, Section 16 of the Missouri Constitution and § 70.220 allow the City and County to enter into an agreement of this kind. The landowners' motion for summary judgment attacking the resolution questions whether sections 89.30 through 89.36 allow the City to cloud title by planning for expansion outside the city limits and then record that plan with the Recorder of Deeds. The landowners' challenge to the cooperative agreement is a single, yet complete claim, and thus the certification of a final and appealable judgment was proper. Accordingly, we have jurisdiction over Washington's appeal.

*The Validity of the Cooperative Agreement*

■■■■ In its principal point on appeal, the City argues that the court erred in ruling, as a matter of law, that the cooperative agreement is "unlawful, unauthorized, null, void and of no force and effect." The City asserts that the cooperative agreement is legal and fully authorized by Article VI, Section 16 of the Missouri Constitution and § 70.220.

Section 70.220 allows cooperative agreements between local governments and other governmental units when the purpose of the agreement is within the powers possessed by those entities and when the agreement requires each entity to act only for those purposes which they are permitted to pursue by statute. In *Roberts v. City of Maryville,* 750 S.W.2d 69 (Mo. 1988), Maryville entered into a cooperative agreement with the State Department of Natural Resources and the U.S. Soil Conservation Service to create a water reservoir. The agreement obligated Maryville to partially fund the project and stated that Maryville would have access to a considerable portion of the water stored. *Id.* at 70. The Supreme Court ruled that Maryville had authority under § 70.220 to enter into this agreement because Maryville had statutory authority to expand and

improve its water supply and the city's funding of the project was not shown to support any purposes outside of the city's powers. *Id.*

Here, the City seeks to ease its traffic burden by entering into a cooperative agreement with Franklin County for the construction of a road within Franklin County. The City is authorized by § 71.340 to manage its traffic burden by funding roadways outside of its natural limits. The cooperative agreement here only obligates the City to fund the creation of the road and nothing more. We therefore conclude that the agreement does not obligate the City to pursue any purpose outside its powers.

■■■ But the landowners argue that summary judgment declaring the cooperative agreement invalid was proper because § 70.220 does not, as a matter of law, authorize the City to enter into this cooperative agreement. The landowners launch a variety of arguments in support of this contention. First among them is the argument that § 70.220 authorizes only those agreements where all parties to the agreement have independent authority to take all necessary actions. They argue that § 70.220 would authorize this cooperative agreement only if both the City and County had independent authority to pursue all of the acts identified in the agreement. Because the City of Washington lacks authority to independently condemn land within Franklin County, the landowners assert that § 70.220 does not allow this cooperative agreement.

The Missouri Supreme Court rejected this narrow interpretation of § 70.220 in *Roberts*. *Roberts* featured a group of Maryville citizens challenging the validity of a cooperative agreement whose primary purpose was to secure the local water supply by creating a water reservoir. *Roberts*, 750 S.W.2d at 69–70. But the agreement

also pursued other goals; it called for the erection of a recreational area near the reservoir and for the construction of several projects aimed at flood control. *Id.* at 70. The citizens argued that because Maryville lacked authority to erect a recreational area or pursue flood control projects outside of its territorial limits that § 70.220 did not authorize the agreement. *Id.* at 70–1. They argued that § 70.220 allows a government to enter into cooperative agreements only if *all* of the goals pursued by the agreement fall within the government's power. The Supreme Court rejected this argument, stating that "to narrowly construe § 70.220 as urged by appellants would constrict the cooperative efforts between Missouri governmental entities in a manner not envisioned by § 16 of Art. VI and thwart the intendment of the statutory section." *Id.* at 71. Section 70.220 does not limit governments to cooperation only on those projects that they could legitimately pursue alone. Point denied.

The landowners next argue that the cooperative agreement is invalid as a matter of law because it allows the City to condemn land outside its territorial limits. This argument misreads the cooperative agreement. The agreement obligates Franklin County, not the City, to condemn land within its borders:

*RESPONSIBILITIES OF COUNTY*

The county shall have the following responsibilities and duties with regard to the establishment of the proposed outer road:

· · · · ·

3. *Proceed with condemnation in the name of Franklin County as requested by City in order to acquire any right-of-way within the designated corridor which city is not otherwise able to ac-*

*quire.* The County shall appoint the City Counselor of City as a Special County Counselor for the purpose of pursuing any condemnation action in the name of Franklin County. The parties acknowledge that City shall pay all costs of any such condemnation to include but not necessarily be limited to attorney's fees, court costs, condemnation awards, engineering services, appraisal fees and witness fees. The parties further acknowledge that since City shall bear all costs of such condemnation that approval from the City shall be required to approve all expenditures for such condemnation. Parties further acknowledge that all right of way acquired in the name of Franklin County will after acquisition be deeded by County to City without any further costs to the City other than recording fees or deed preparation fees.

(emphasis ours).

■ For their third point, landowners argue that the agreement is invalid as a matter of law because it delegates to the City of Washington the power to determine the necessity for condemning land outside of that city but within Franklin County. Landowners argue that § 228.180.2 requires Franklin County to make its own determination of public necessity before it condemns land and that the cooperative agreement impermissibly delegates that determination to the City. Section 228.180.2 reads, in relevant part:

> If the county commission be of the opinion that a public necessity exists for the establishment of a public road, or for the taking of any land or property for such purposes, it shall by an order of record so declare.... Thereupon the county commission shall cause to be published in some newspaper of general circulation in the county, once each week for three consecu-

tive weeks, a notice giving the width, beginning, termination, courses and distances and sections and subdivisions of the land over which the proposed road is to be established, or the location, area, dimensions and descriptions of any other land or property to be taken, or both, and that such land or property is sought to be taken for public use for road or bridge purposes.

■ We agree that § 228.180.2 mandates an express determination of public necessity by the County Commission prior to every act of public condemnation to establish a public road. But the agreement here does not preclude Franklin County from making such a determination. Rather it obligates Franklin County to "proceed with condemnation procedures." "Condemnation procedures" include activity by the commission that comports with § 228.180.2 RSMo, which, in turn, requires the county to make a determination of public necessity. The agreement, as written, does not preclude compliance with § 228.180.2 and we will not base a ruling on the assumption that the statutory requirements will not be followed as the condemnation process proceeds.

■ Landowners next attack the City's reliance upon § 71.340 RSMo. They argue that § 71.340 does not place funding for the proposed road within the City's powers because § 71.340 only authorizes appropriations to fund a roadway leading "to and from" the city. It does not, they contend, provide authority to fund a road *completely outside* the city's natural boundary.

The City of Washington, however, maintains that the proposed road does run "to and from" the City. The City pleaded this fact in its response to landowners' motion for partial summary judgment. It supported this pleading by an affidavit of the City Engineer, stating that "the proposed

corridor for the proposed outer road leads to and from the city and is not intended to bypass the city."

█ As previously noted, our view of the record is a narrow one. When considering an appeal from the grant of summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993). To sustain the grant of summary judgment on appeal, the movant must show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378. Here, there is a genuine dispute as to whether the proposed road runs "to and from" the city. Awarding summary judgment on the theory that the road does not lead to and from the city is error because the evidence on file is genuinely in conflict.

█ Landowners also claim that it was proper to invalidate the agreement because § 226.950 et seq. grants the Missouri Highway Commission exclusive authority to reserve a corridor for road development. That statute reads, in part:

1. Whenever the commission has approved the location of a highway corridor ... *it may* file a certified copy of a corridor map ... with the recorder of deeds in every county in which a portion of the highway corridor is located.

(emphasis added).

We can read nothing in this statute to indicate an intent to grant the Highway Commission *exclusive* authority to reserve a road corridor. It simply does not state that the power is exclusive to the Commission, nor do landowners' offer authority or explanation to support such a reading. Point denied.

*Landowners' Cross Appeal*

█ Finally, landowners filed a cross appeal challenging the failure of the trial court to grant their motion for summary judgment invalidating the resolution passed by the City to memorialize the proposed roadway.

█ Generally, an order denying a motion for summary judgment is not a final judgment and therefore is not reviewable on appeal. *Reben v. Wilson*, 861 S.W.2d 171, 175 (Mo.App. E.D.1993). In some instances, the denial of a motion for summary judgment may be reviewable on appeal where the merits of that motion are intertwined with the propriety of an appealable order granting summary judgment to another party. *Stone v. Crown Diversified Industries Corp.*, 9 S.W.3d 659 (Mo.App. E.D.1999) (*citing Kaufman v. Bormaster*, 599 S.W.2d 35, 38 (Mo.App. E.D.1980)).

Here, the landowners moved for summary judgment after challenging both the cooperative agreement and the resolution. They argue that the cooperative agreement was invalid because the City of Washington lacked authority under Article VI, Section 16 of the Missouri Constitution and § 70.220 to enter into it. They argue that the resolution was invalid because § 89.30 through § 89.36 did not allow the City to cloud their property titles by planning for a roadway outside the city's limits. We hold that the merits of these motions are not sufficiently intertwined to warrant our review of the denial of landowners' motion for summary judgment. Landowners' cross appeal is dismissed.

The trial court erred in granting summary judgment declaring the cooperative agreement invalid. Landowners' cross appeal is dismissed for lack of jurisdiction. This cause is remanded with instructions to proceed in accordance with this opinion.

CLIFFORD H. AHRENS, P.J., and WILLIAM H. CRANDALL, Jr., JJ., Concur.